UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                 :

UNITED STATES OF AMERICA,          :

            v.                    :      **MEMORANDUM AND ORDER**

                                 :      23-CR-432 (WFK)

ANGEL BETANCUR-LOPEZ,        :

                                 :

            Defendant.       :
-------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 9, 2025, Angel Betancur ("Defendant") pled guilty to one count of conspiracy to commit interstate transportation of stolen property in violation of 18 U.S.C. § 371. Plea Agreement ("Plea") ¶ 1, ECF No. 96. The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to thirty (30) months' imprisonment; two (2) years of supervised release with both the standard and special conditions of supervision; restitution in the amount of $5,289,578.00, plus interest, as set forth in the Order of Restitution; forfeiture of items identified in the Preliminary Order of Forfeiture, ECF No. 98; and a $100.00 mandatory special assessment.

## I.     Background

### *Factual Background*

From August 2022 through January 2023, Defendant, John Arenas Polo ("Polo"),

Katherine Quintero Daza ("Daza"), and Carlos Alberto Manrique Ducuara ("Ducuara," together

with Defendant, Polo, and Daza, "Defendants") engaged in multiple thefts and attempted thefts

across the United States, during which they stole jewelry, watches, antique coins and sums of

United States currency. Presentence Investigation Report ("PSR") ¶¶ 9–13, 26, ECF No. 114;

Gov't Sent'g Mem. at 1–2, ECF No. 141; Def.'s Sent'g Mem at 1, ECF No. 131. To carry out

these thefts, Defendants employed coordinated distractions, surveillance of potential targets

1

and/or individual victims, disguises, and transportation of stolen property across state lines.[1] PSR ¶ 4; Gov't Sent'g Mem. at 1.

Defendant was involved in at least three thefts. *See* PSR ¶¶ 9–13; Gov't Sent'g Mem. at 1; Def.'s Sent'g Mem. at 3.

On August 15, 2022, Defendants entered a jewelry convention in Chicago, Illinois, and stole items collectively valued at $385,900.00. *Id.* ¶ 9; Gov't Sent'g Mem. at 1. Video surveillance showed Defendant, Polo, and Daza pushing a cart containing jewelry out of the convention while Ducuara distracted the jewelry vendor. PSR ¶ 9. Defendants stole twenty-three Rolex watches and numerous antique coins. *Id.*

On October 22, 2022, Defendants entered a jewelry exposition at the Javits Center in New York, New York, and stole jewelry valued at $418,778.00 from two vending booths. *Id.* ¶¶ 10–11; Gov't Sent'g Mem. at 2. Video surveillance showed Daza engaging a jeweler/vendor in conversation while Ducuara entered the jeweler/vendor's booth and removed a black case labeled "Diamond." PSR ¶ 10. Ducuara subsequently placed the case in Polo's backpack, who then left the exposition. *Id.* Later that day, video surveillance captured Daza at a different booth where she engaged a different jeweler/vendor in conversation. *Id.* ¶ 11. While Daza distracted the jeweler/vendor, Ducuara stole a case of jewelry from the booth and placed it in a garbage bin. *Id.* Defendant—who was wearing a yellow safety vest and posing as an employee of the Javits Center—wheeled the garbage bin containing the discarded case toward a loading dock with Ducuara's assistance. *Id.* Defendants then left the scene. *Id.*

---

[1] Defendants utilized various aliases to shield their true identities. This Defendant is otherwise known as "David Gamboa"; Polo as "Jairo Antonio Garzon Castenada"; Daza as "Jessica Marlen Salazar" and "Catalina Aponte Garcia"; and Ducuara as Mauricio Morena," "Miguel Angel Conde Lucas," "Mario Moncaleano Moreno" and "Alberto Piedra Encarnacion." Third Superseding Indictment (the "Indictment") ¶ 1, ECF No. 24.

Defendant has changed course on his involvement in the October 22, 2022 theft since filing his original sentencing memorandum. In a supplement to Defendant's memorandum filed on April 9, 2026, Defendant argues he was not "present during the Javits Center theft of October 22, 2024." Second Supp. to Def.'s Sent'g Mem. at 2, ECF No. 140.[2] However, Defendant seemingly admitted to this conduct in earlier filings. In Defendant's first memorandum, he acknowledged his participation in four thefts, including the theft on October 22, 2022. Def.'s Sent'g Mem. at 3 (arguing "[n]one of the four thefts in which [Defendant] participated, [including October 22, 2022] involved" theft from the person of another). It is not clear in the PSR what Defendant's level of involvement was in the first instance of theft on October 22, 2022. *See* PSR ¶ 10. However, Defendant's first objection to the PSR stated, "[Defendant] merely posed as an employee and assisted other to wheel the stolen jewelry case toward the loading dock" during the second theft on October 22, 2022. *Id.*, Ex. A at 4. For purposes of the Total Adjusted Offense Level, his level of involvement in the October 22, 2022 theft does not have any material impact on the Guidelines range.

On October 26, 2022, Defendant, Ducuara, and Polo entered a jewelry exposition show at the Metropolitan Pavillion in New York, New York, and stole jewelry valued at $229,000.00. *Id.* ¶ 12; Gov't Sent'g Mem. at 2.[3] Video surveillance captured Ducuara posing as a worker and pushing a hand truck while Defendant and Polo distracted individuals nearby. PSR ¶ 12. Ducuara then approached a jewelry booth and removed a jewelry box while the jeweler/vendor

---

[2] Although Defendant refers to this theft as taking place in 2024, this was seemingly in error given the only theft occurring on October 22 occurred in 2022. *See* PSR ¶ 23.

[3] The PSR indicates Daza participated in the theft on October 26, 2022, in New York, New York. *Id.* ¶ 12. However, the Government conceded Daza was not involved in that event. *See* Second Add. to the PSR as to Katherine Quintero Daza at 1, ECF No. 117.

3

was not looking. *Id.* Ducuara placed the jewelry box inside a rolling garbage can and exited through the loading dock in the back of the building. *Id.*

On January 12, 2023, Defendants entered a coin exposition show at the InterContinental New York Barclay Hotel in New York, New York, and stole coins valued at $400,000.00. *Id.* ¶ 13; Gov't Sent'g Mem. at 2. Video surveillance captured Defendant engaging a security guard in conversation while Polo and Daza distracted nearby individuals. PSR ¶ 13. Ducuara subsequently opened a display case, placed various coins into a roller bag, and left the scene. *Id.*

### *Procedural Background*

On August 13, 2023, Massachusetts State Police arrested Defendant in Boston, Massachusetts for a separate offense. *See id.* ¶¶ 26, 57; Gov't Sent'g Mem. at 2. On December 15, 2023, a federal arrest warrant was issued for Defendant in the instant case. PSR ¶ 26. Defendant was transferred into federal custody via writ on August 21, 2024. *Id.*

Co-defendant Daza was charged via complaint, misdemeanor information, and first superseding indictment on September 27, 2023, October 30, 2023, and November 3, 2023, respectively. Complaint, ECF No. 1; Misdemeanor Information, ECF No. 8; First Superseding Indictment, ECF No. 10. Polo was added to the case and charged alongside Daza in the second superseding indictment on November 17, 2023. Second Superseding Indictment, ECF No. 11.

The third superseding indictment (the "Indictment") added the remaining Defendants—Defendant and Ducuara—and asserted four counts: Count One against Defendants alleged conspiracy to commit interstate transportation of stolen property contrary to 18 U.S.C. § 2314 and in violation of 18 U.S.C. § 371; Count Two against Polo alleged entry to a secure area by false pretenses in violation of 18 U.S.C. § 1036(a)(4); Count Three against Daza alleged entry to a secure area by false pretenses in violation of 18 U.S.C. § 1036(a)(4); and Count Four against

4

Daza alleged interstate transportation of stolen property in violation of 18 U.S.C. § 2314. Indictment ¶¶ 1–5. The Indictment also asserted criminal forfeiture allegations pertaining to Counts One and Four. *Id.* ¶¶ 6–9.

On May 9, 2025, Defendant pled guilty to Count One of the Indictment, charging him with conspiracy to commit interstate transportation of stolen property in violation of 18 U.S.C. § 371. Plea ¶ 1. Pursuant to the Plea, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposes a term of sixty (60) months' imprisonment or below. *Id.* ¶ 4. The Government agreed "no further criminal charges will be brought against the defendant for engaging in the interstate transportation of stolen property between June 2022 and October 2023, and conspiring to do so, as charged in Count One of the Indictment[.]" *Id.* ¶ 5(i).

On August 16, 2024, Daza pled guilty to Count One of the Indictment. Daza Plea Agreement ¶ 1, ECF No. 48. She was sentenced on January 28, 2026, to forty-six (46) months' imprisonment, two (2) years of supervised release, restitution in the amount of $5,289,578.00, forfeiture, and a $100.00 mandatory special assessment. Daza Sent'g Mem. and Order at 1, ECF No. 127.

On October 1, 2024, Polo pled guilty to Count One of the Indictment. Polo Plea Agreement ¶ 1, ECF No. 70. He was sentenced on April 9, 2026, to fifty-seven (57) months' imprisonment, two (2) years of supervised release, restitution in the amount of $4,894,678.00, forfeiture, and a $100.00 mandatory special assessment. Polo Sent'g Mem. and Order at 1, ECF No. 143.

On October 25, 2024, Ducuara pled guilty to Count One of the Indictment and Count One of an indictment pending against him in the Southern District of New York, *United States v.*

5

*Carlos Alberto Manrique Ducuara*, 23-CR-432 (S.D.N.Y.).  Ducuara Plea Agreement ¶ 1, ECF No. 78.  Ducuara is not yet scheduled for sentencing.

## II.    Legal Standard

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553.  Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines (the "Sentencing Guidelines," or "Guidelines," or "U.S.S.G.") operate as the "starting point and . . . initial benchmark" for a court evaluating a criminal sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  If and when a trial court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. § 3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form."  *Id.*  The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the Court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  *See* 18 U.S.C. § 3553(a).  The Court now addresses each factor in turn.

## III.    Analysis

### A.  The Nature and Circumstances of the Offense and the History and Characteristic of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### i.  Family and Personal History

Defendant was born on April 15, 1990, in Bogota, Colombia. PSR ¶ 60. Defendant reports a childhood "marked by poverty and instability." *Id.* ¶ 62. His parents, Guillermo Betancur and Raquel Lopez, remained together until he was five years of age. *Id.* ¶¶ 60, 62. Defendant's father struggled with drug addiction and expressed a desire to place Defendant up for adoption when he was born. *Id.* ¶ 62. Defendant was abused by his father until the age of six, when his mother took him to live with his uncle. *Id.* However, his uncle also abused him, often beating him with a leather whip when he failed to complete his chores in a timely manner. *Id.*

At nine years old, Defendant returned home to live with his mother after Colombia guerrilla soldiers approached Defendant and tried to recruit him. *Id.* Upon moving back in with his mother, Defendant and his brother were physically and sexually abused by his mother's boyfriend. *Id.* Defendant ran away from home at age twelve because of this ongoing abuse, only returning at sixteen years old when his mother's boyfriend left the home. *Id.*

Defendant's father is now seventy-seven years old and his mother is sixty-eight years old. *Id.* ¶ 60. Both have ongoing health issues and reside in Colombia. *Id.* Defendant reports a good relationship with his parents, but he has not had the opportunity to speak often with them since his incarceration. *Id.* Both of his parents are aware of the instant case and remain supportive. *Id.*

7

Defendant is one of three children.  Jesus Betancur is forty-three years old and resides in Florida, working as a cleaner.  *Id.* ¶ 61.  Abel Betancur is forty-one years old and resides in Florida, working in construction.  *Id.*  Defendant also has a twenty-four-year-old maternal half-sibling, Juan Cepeda, who resides in Colombia with his mother.  *Id.*  Prior to his incarceration, Defendant helped support his mother and half-brother financially.  *Id.*  Defendant indicated he is not close with his siblings and they only speak sporadically.  *Id.*  All are aware of the instant case.  *Id.*

In 2017, Defendant entered a romantic relationship with Jennifer Guzman.  *Id.* ¶ 63.  Defendant has two children with Guzman: six-year-old Joel Betancur and two-year-old Mia Betancur.  *Id.*  Defendant and Guzman ended their relationship in July 2022 due to Defendant's past infidelity.  *Id.*  Guzman is currently incarcerated for unknown charges.  *Id.*  According to Defendant, she is aware of his charges and is not supportive of him.  *Id.*  Defendant cared for Joel and Mia from December 15, 2023, until January 2025 when Guzman's mother arrived in the United States.  Ad. PSR at 2.  Since Defendant's arrest, his son Joel "has been experiencing symptoms of depression" and sees a psychiatrist.  PSR ¶ 63.

Defendant entered a brief romantic relationship with Jamie Aguilar in 2022.  *Id.* ¶ 64.  The couple share two children: two-year-old twins Maximo and Lucas Betancur.  *Id.*  The children reside in Colombia with their mother and suffer from pulmonary health issues.  *Id.*  Prior to his arrest, Defendant sent financial assistance to Aguilar on an as-needed basis and paid her rent.  *Id.*  Since Defendant's arrest, Aguilar has moved in with her mother.  *Id.*  Defendant last saw his children on a video call in August 2023.  *Id.*

Defendant entered the United States illegally in 2021.  *Id.* ¶ 66.  He reported leaving Colombia "because his safety was compromised due to his involvement in a government group."

8

*Id.* He spent approximately a year in Florida and three months in California before settling in Jackson Heights, New York, where he remained until his arrest. *Id.* Defendant is currently under removal proceedings and has an immigration detainer lodged against him by U.S. Immigration and Customs Enforcement. *Id.*

Defendant received letters of support from various members of his community, including friends, family, and individuals who worked both with and for him. *See* Def.'s Sent'g Mem., Ex. C, ECF No. 131-3. Defendant's friend Stefanny Ramirez describes Defendant as someone who sought to help his community. *See id.* Ramirez recalls Defendant's efforts to collect clothes and food for fifty poor families in the area. *Id.* at 4. She described Defendant as "a really good person and a great father." *Id.*

### ii.   Educational and Employment History

Defendant has a twelfth-grade education. PSR ¶ 79. He withdrew from his studies due to the abuse he was experiencing at home. *Id.*

Since being incarcerated at the Metropolitan Detention Center Brooklyn (the "MDC"), Defendant has completed a certification in general educational development and participated in various programming about life skills and family relationships. *See* First Supp. to Def.'s Sent'g Mem., Ex. D, ECF No. 132-1.

### iii.   Prior Convictions

Defendant was arrested on March 13, 2023, for Criminal Possession of Stolen Property in the 5th Degree, a Class A Misdemeanor. Ad. PSR ¶ 52. Defendant was sentenced to time served by the New York County Supreme Court. *Id.* The underlying conduct for the offense involved the October 26, 2022 theft described in the instant case. *Id.*

9

#### iv.  *Physical and Mental Health*

In January 2025, Defendant was physically assaulted while in custody at the MDC and suffered injuries to his jaw and spine.  PSR ¶ 69.  Since his incarceration, Defendant has suffered several injuries to his arm. *See* Sent'g Tr. t 14:12–16:1.  He has also been diagnosed with a stomach infection which causes him ongoing pain.  *Id.* ¶ 70.

In terms of mental and emotional health, Defendant disclosed a history of suicidal ideation when he was twelve years of age.  *Id.* ¶ 71.  He reports those thoughts have since subsided and he has no other history of mental or emotional health conditions.  *Id.*

#### v.  *Substance Abuse*

Defendant has a history of drug and alcohol use.  *Id.* ¶¶ 72–78.  He first consumed alcohol at the age of twelve.  *Id.* ¶ 72.  He reported drinking heavily on the weekends until his arrest in the instant case in August 2024.  *Id.*  He believes he may have an alcohol problem.  *Id.*

Defendant began smoking marijuana and using Rivotril, a benzodiazepine, daily since he was twelve years of age.  *Id.* ¶¶ 73–74.  He stopped using Rivotril when he was fifteen years of age but continued smoking marijuana until 2024.  *Id.*  Defendant reported sniffing glue and smoking basuco, a cocaine paste, starting when he was thirteen years of age.  *Id.* ¶¶ 75–76.  However, he last engaged with these drugs during his teenage years.  *Id.*

Defendant was fifteen years of age when he was placed in a government program that gave him money to turn in drugs.  *Id.* ¶ 78.  He credits the program—which he eventually helped operate—with helping him achieve sobriety at the time.  *Id.*  Outside of this program, Defendant never received formal drug abuse treatment for any of the substances he interacted with.  *Id.* ¶ 78.

Years later, when Defendant was twenty-two years of age, Defendant began using 2C-D, a psychedelic drug. He typically used the drug two to three times per week but stopped in 2024. *Id.* ¶ 77.

### vi. Nature and Circumstances of the Offense

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct. Defendant engaged in sophisticated, coordinated efforts across the United States to steal items of significant value. Defendant was successful in these endeavors, as he participated in at least three thefts totaling over $1 million in losses to the victims. *See* PSR ¶ 23. The Court's sentence will deter Defendant and others from engaging in similar conduct, justly punish Defendant for his crimes, and protect the public from Defendant's actions. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a)(2).

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to one count of conspiracy to

commit interstate transportation of stolen property in violation of 18 U.S.C. § 371, to wit, a violation of 18 U.S.C. § 2314. Plea ¶ 1.

Defendant faces a maximum term of five years' imprisonment and no minimum term. 18 U.S.C. § 371. Defendant also faces a maximum term of three years of supervised release. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years of imprisonment without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e). Defendant is eligible for a term of probation of one to five years. 18 U.S.C. § 3561(c)(1). Unless extraordinary circumstances exist, the Court must impose one of the following as a condition of probation: a fine, restitution, or period of community service. 18 U.S.C. § 3563(a)(2).

### D. The Kinds of Sentence and Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to consider "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

All parties agree the applicable Guideline provision is U.S.S.G. § 2X1.1, which directs the Court to apply the "base offense level for the substantive offense." Here, the base offense level for the substantive offense—interstate transportation of stolen property—is found in U.S.S.G. § 2B1.1, which covers, *inter alia*, forms of theft. *See* U.S.S.G. § 2X1.1(a); *see* PSR ¶ 27; Gov't Sent'g Mem. at 3; Plea ¶ 2. Under U.S.S.G. § 2B1.1(a)(2), Defendant has a Base Offense Level of 6.

The parties agree certain adjustments should apply to Defendant but disagree as to others.

First, all parties agree U.S.S.G. § 2B1.1(b)(1)(H) adds fourteen levels because the total loss stemming from the offense—based on the Government's estimates and Defendant's plea agreement—was greater than $550,000.00 but less than $1,500,000.00. U.S.S.G. § 2B1.1(b)(1)(H); *see* Addendum to PSR ("Ad. PSR") ¶ 39; Gov't Sent'g Mem. at 3; Def.'s Sent'g Mem. at 7.[4]

Second, the parties agree a two-level reduction should apply because Defendant is a Zero-Point Offender as defined in U.S.S.G. §§ 4C1.1(a)(1)–(11). Ad. PSR ¶ 49; Gov't Sent'g Mem. at 3; Def.'s Sent'g Mem. at 7; Plea ¶ 2.[5]

Third, the parties agree a three-level reduction should apply for Defendant's timely acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b). Ad. PSR ¶¶ 47–48; Gov't Sent'g Mem. at 3; Def.'s Sent'g Mem. at 7; Plea ¶ 2.[6]

As to disagreements, the Government and U.S. Probation Office ("Probation") state U.S.S.G. § 2B1.1(b)(3) adds two levels because the offense involved a theft from the person of another. Ad. PSR ¶ 41; Gov't Sent'g Mem. at 3. Defendant argues the enhancement should not apply. *See* Def.'s Sent'g Mem. at 3–4. This two-level enhancement is in the Plea. Plea ¶ 2.

Second, the Government and Probation also agree U.S.S.G. § 2B1.1(b)(10)(C) adds two levels because the offense involved sophisticated means. Ad. PSR ¶ 42; Gov't Sent'g Mem. at

---

[4] The Government's exact position on total loss is unclear. The Plea originally added eighteen levels for "loss exceed[ing] $3.5 million" pursuant to U.S.S.G. § 2B1.1(b)(1)(J). Plea ¶ 2. The Government subsequently filed its sentencing memorandum, which still cited § 2B1.1(b)(1)(J) but instead noted the loss is "more than $1.5 million," to which a sixteen-level enhancement would apply. The calculation, however, included only a fourteen-level enhancement, consistent with the PSR. *See* Gov't Sent'g Mem. at 3.

[5] The PSR also originally included a two-level enhancement for an offense involving ten or more victims as defined in U.S.S.G. § 2B1.1(b)(2)(A)(i). PSR ¶ 40. The parties agree the enhancement should not apply. *See* Ad. PSR at 1–2.

3. Defendant disagrees. Def.'s Sent'g Mem. at 4–5. This two-level enhancement is in the Plea. Plea ¶ 2.

Finally, the Government and Probation agree there should be no role adjustment under U.S.S.G. § 3B1.2. Ad. PSR ¶ 44; *see generally* Gov't Sent'g Mem at 3. Defendant argues, under Application Note 5 of the Guidelines Amendments effective November 1, 2025, Defendant is entitled to a two-point downward adjustment as a minor participant. Def.'s Sent'g Mem. at 5–6.

All parties agree Defendant's Criminal History Category is I. *See* U.S.S.G. § 4A1.1; Ad. PSR ¶ 54; Gov't Sent'g Mem. at 3; Def.'s Sent'g Mem. at 6 (arguing Defendant should have zero criminal history points).

Because the parties disagree as to enhancements and mitigating factors, they arrive at different calculations for the applicable Guidelines range. The Government and Probation calculate a Total Adjusted Offense Level of nineteen (19) which, with a Criminal History Category of I, results in a Guidelines range of thirty (30) to thirty-seven (37) months' imprisonment. Gov't Sent'g Mem. at 3; Revised Prob. Sent'g Rec. at 1, ECF No. 139-1; *see also* U.S.S.G. § 5A. Defendant calculates a Total Adjusted Offense Level of thirteen (13) which, with a Criminal History category of I, results in a Guidelines range of twelve (12) to eighteen (18) months' imprisonment. Defs. Sent'g Mem. at 7.

This Court appreciates the sentencing arguments raised by all parties and seriously considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). The parties have not drawn the Court's attention to any additional policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

14

### F.  The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant raises the need for a variance due to the "horrific conditions that inmates have been required to endure at [the] MDC." Def.'s Sent'g Mem. at 7.  Defendant notes "it has become routine for judges in both [the Southern] District and Eastern District to give reduced sentences to defendants based on the conditions of confinement in the MDC." *Id.* (citing *United States v. Colucci*, 743 F. Supp. 3d 452, 455 (E.D.N.Y. 2024) (Brown, J.) (internal quotations omitted)).  Particularly where Defendant has been targeted and physically assaulted by other inmates on two separate occasions and has spent considerable time locked down in the Specialized Housing Unit, Defendant argues a downward variance is justified. *Id.*

The Court has reviewed and considered carefully Defendant's arguments.  For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities and is consistent with the sentence previously imposed on his co-defendants Daza and Polo.

### G.  The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).  Pursuant to the Plea, Defendant agreed to a Restitution Order in the amount of $5,289,578.00, consistent with 18 U.S.C. §§ 3663A and 3664.  Plea ¶ 1(e).

Probation indicated the Government has provided contact information for the identified victims, and affidavits of loss were forwarded to the victims.  PSR ¶ 100.  As of the time of

15

sentencing, not all responses have been received from the victims. *Id.* The Court reserves its right, pursuant to 18 U.S.C. § 3664(d)(5), to hold an evidentiary hearing within ninety (90) days after this sentencing to determine the specific amounts owed to Defendant's victims.

## IV.    Conclusion

For the reasons set forth above, the Court sentences Defendant to thirty (30) months' imprisonment; two (2) years of supervised release with both the standard and special conditions of supervision; restitution in the amount of $5,289,578.00, plus interest, as set forth in the Order of Restitution; forfeiture of items identified in the Preliminary Order of Forfeiture, ECF No. 98; and a $100.00 mandatory special assessment. This sentence is sufficient, but not greater than necessary, to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's present financial circumstances.

The Court expressly adopts the factual findings of the Presentence Investigation Report and Addenda thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion. The Court advises the Defendant he has fourteen (14) days to appeal the order and judgment of this court from the date the order and judgment are entered.

SO ORDERED.

**s/WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 15, 2026
       Brooklyn, New York

16